UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Civil Action No. 8:18-CV-263[GTS/CFH] |
| Plaintiff | ) | |
| v. | ) | |
| | ) | |
| $3,748.00 in U.S. Currency and | ) | |
| KeyBank Acct. # XXXX8205 VL: | ) | |
| $15,571.85, | ) | |
| | ) | |
| **Defendants.** | ) | |

## VERIFIED COMPLAINT OF FORFEITURE *IN REM*

Plaintiff, United States of America, by its attorneys, Grant C. Jaquith, United States Attorney for the Northern District of New York, and Tamara B. Thomson, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.

## NATURE OF ACTION

1) This is an action to forfeit and condemn to the use and benefit of the United States of America the following: $3,748.00 in U.S. Currency and $15,571.85 seized from KeyBank Acct. # XXXX8205 in violations of 18 U.S.C. §§ 1343, 1956 and 21 U.S.C. §§ 841 and 846.

## THE DEFENDANT IN REM

2) The defendant $3,748.00 in U.S. Currency, was seized from Holden J. Paquin on or about September 25, 2017.

3) The defendant $15,571.85 was seized from KeyBank Acct. # XXXX8205 in the name of Holden J. Paquin, ("funds on deposit in the defendant financial account") on or about October 10, 2017.

4) The defendant $3,748.00 in U.S. currency and the defendant $15,571.85 on deposit in the defendant financial account are presently in the custody of the United States Marshal Service in Syracuse, New York.

## JURISDICTION AND VENUE

5) Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant $3,748.00 in U.S. currency and the defendant $15,571.85 on deposit in the defendant financial account. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

6) This Court has in rem jurisdiction over the defendant $3,748.00 in U.S. currency and the defendant $15,571.85 on deposit in the defendant financial account under 28 U.S.C. § 1355(b). Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

7) Venue is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395, because the acts or omissions giving rise to the forfeiture occurred in this district.

## BASIS FOR FORFEITURE

8) The defendant $3,748.00 in U.S. currency and the defendant $15,571.85 on deposit in the defendant financial account are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). 21 U.S.C. § 881(a)(6) provides for the forfeiture of:

> all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 801 et seq., all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of 21 U.S.C. §§ 801, *et seq.*

*Id*

9) The defendant $3,748.00 in U.S. currency and the defendant $15,571.85 on deposit in the defendant financial account are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because they constitute:

> "Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956 or 1957 of this title, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy."

10) The defendant $3,748.00 in U.S. currency and the defendant $15,571.85 on deposit in the defendant financial account are also subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because they constitute:

> "Any property, real or personal which constitutes or is derived from proceeds traceable to a violation of section 216, 471, 472.... or 1344 or this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense."

## FACTS

11) The facts alleged in this complaint are based upon information and belief, the sources of which are reports from the Drug Enforcement Administration ("DEA"), and other written and oral information officially received by the Office of the United States Attorney for the Northern District of New York.

12) On September 23, 2017, Holden J. Paquin ("Paquin") approached Plattsburgh City Police patrol officers ("PCPD") and advised them that while he was at an event in the City of Plattsburgh, his residence at Oak Street, Plattsburgh, New York had been burglarized. He reported that a laptop, cellphone, a large safe, and $10,000 in U.S. Currency were taken from his residence.

13) PCPD responded to the Paquin's residence at Oak Street, Plattsburgh and observed what appeared to be items used for the packaging and sale of marijuana in plain sight.

14) Paquin advised that he has a concert promotion business called "Lake City Promotions", that was established in February 2017 with a business address of 38G Adirondack Lane, Plattsburgh, New York, Paquin's prior home address.

15) Paquin was interviewed by Detectives with the PCPD on or about September 25, 2017. After being read his *Miranda* rights, Paquin made the following statements:

> Detective #1: I know you're trying to get to that. If you were to be successful as a promoter, without having to sell drugs to do that, you could be very successful at it, I understand that. How much did it take you to promote this concert, with this rapper?
>
> Paquin: Couple thousand.
>
> Detective #1: If you did not sell weed you would not be able to have that. You personally would not have been able to do that.
>
> Paquin: I have my tattoo license as well.
>
> Detective #1: But you're not out there making too much money on tattoos. When's the last time you did a tattoo?
>
> Paquin: Like a month ago.
>
> Detective #1: And how much was that?
>
> Paquin: Couple hundred dollars.
>
> Detective #1: Okay, without asking specific names, because I am well aware of where you're getting the weed from. How long have you been doing this, specifically, just you? This is not a question that I don't know, it's a question of are you going to be honest with me. How long has it been that you have been receiving weed from out of state?
>
> Paquin: It's only been like…since the package that was taken… there's only been 3 or 4 packages since then.
>
> Detective #1: Since then, but prior to then…

| | |
|---|---|
| Paquin: | No no no. Not since then, from before then. |
| Detective #1: | How many times have you received, do you think, when packages arrive, when mail, UPS, FedEx... |
| Paquin: | I did not receive anything, technically. |
| Detective #1: | If you didn't receive it, how do you get it, if it is not being sent to you directly? |
| Paquin: | It's at someone else's house. I went and picked it up. |
| Detective #1: | But is it intended for you. For you, to resell? |
| Paquin: | Yea |
| Detective #1: | So you're just using a third party house to ship it to it? |
| Paquin: | Yea |
| Detective #1: | Is that true? |
| Paquin: | Sorta, yea. |

16) The above conversation refers to a package was intercepted at UPS on or about May 23, 2017, that was turned over to the New York State Police. The package contained approximately 3 pounds of marijuana and 115 grams of concentrated cannabis. The package was destined for Lake City Promotions at 38G Adirondack Lane, Plattsburgh, New York, Paquin's business address, and home address at that time. The marijuana was shipped from Wildomar, California.

17) The Detectives continued to interview Paquin about the quantities of marijuana he has sold:

| | |
|---|---|
| Detective #1: | Be honest with me, how much do you think you've sold? |
| Paquin: | I don't know. I can't say. |
| Detective: | More than or less than, you know that game that your teacher plays. Did you pick up five pounds of apples today or pick up 300 pounds of apples today? |
| Paquin: | Well, I bought it by the bulk so I can get it cheaper. |
| Detective #1: | Well what do you mean by bulk? How much is a pound, bulk? |

| | |
|---|---|
| Paquin: | 23. |
| Detective #1: | A pound? |
| Paquin: | Yea |
| Detective #1: | On average you'd get how many pounds a week? |
| Paquin: | Maybe like, couple, 2-3 pounds. |
| Detective #1: | Okay. |
| Paquin: | That was not always consistent. There are some weeks I went with none, some weeks 4. |
| Detective #1: | So, I will help you out by saying that you have been doing this for more than 6 months. Is that a fair statement? |
| Paquin: | Yea |
| Detective #1: | Okay let's just say you got it twice a month, as opposed to 4 times a month. Let say you did 2 pounds a week, that's 4 pounds a month, minimal. Would that be fair to say? |
| Paquin: | Yea |
| Detective #1: | Times 6. That's at least 24 pounds in six months. 6 times 4. Does that make sense? |
| Paquin: | Yea |
| Detective #1: | That would be on the low end. Correct? It could be more since you received more? |
| Paquin: | Yea |

18) The Detectives continue to question Paquin about the location of the proceeds of the marijuana sales:

| | |
|---|---|
| Detective #1: | It ain't a really good thing to keep cash on hand. |
| Paquin: | Right |
| Detective #1: | You know what I'm saying. Keeping money in your home is another attractive measure for people coming over. |
| Paquin: | I usually don't. I usually have it in the bank. |

Detective #1: What do you use for banks?

Paquin: Key Bank.

Detective #1: What other banks do you use?

Paquin: That's it.

Detective #1: You got money in the bank that are proceeds from your sales? Probably not a lot.

Paquin: No, the majority of my stuff was taken the other night.

Detective #1: How often do you use your bank? Weekly?

Paquin: To pay my bills.

Detective #1: I understand that. Eddy said that you have a safety deposit box. That's at Key Bank?

Paquin: Yea

Detective #1: Do you keep money in there?

Paquin: Yea, but not anymore. Because I don't have any money.

19) According to Paquin and the interview with PCPD detectives, Paquin previously sent the payment for the artist performing at the concert:

Detective: So where is all the money that you made from the concert?

Paquin: Coming to me in a check.

Detective: You haven't been paid yet? Whose paying you?

Paquin: The Eventbrite website.

Detective: So you booked this all through that?

Paquin: No, I sold the tickets through that.

Detective: But you haven't been paid yet.

Paquin: No

Detective: Don't be putting that in your house.

Paquin: No. no.

| | |
|---|---|
| Detective #2: | Is that like 10000? |
| Detective #1: | No that's going to be in the 20s because… |
| Paquin: | Well its 15 and I have a little bit of cash from the in-person tickets. I've got 2 or 3000 from the in-person ticket sales. |

20) As part of his administrative claim, Paquin provided the "Artist Performance Agreement" signed on or about July 17, 2017. According to the agreement Paquin was to wire $7,500.00 in U.S. Currency to the performance artist on July 17, 2017 and the remaining $7,500.00 on September 23, 2017. Paquin was also responsible for 5 round trip flights, hotel accommodations, and ground transport. Paquin made the following statements to Detectives:

| | |
|---|---|
| Detective: | So how much did the concert really cost you? Out of pocket? |
| Paquin: | $7500. |
| Detective: | Who's the rapper? |
| Paquin: | PnB Rock |
| Dube: | Is he like legitimate? |
| Paquin: | Yea he's platinum. He's got a whole platinum song because they take this stuff from ITunes and Amazon and all that stuff now. So however many songs get downloaded, the whole album goes platinum. |
| Detective: | So how many people showed up, I heard it was pretty packed? You use a cover charge for this? |
| Paquin: | Yea. |
| Detective: | How much was the cover charge? |
| Paquin: | Well, there was tickets sold online. |
| Detective: | Did you sell out? |
| Paquin: | Yea pretty much. |
| Detective: | Was there door sales too, or just online? |
| Paquin: | Yea there was door sales. |

| | |
|---|---|
| Detective: | How much was a ticket? |
| Paquin: | It went from $15 to $100. |
| Detective: | So is it fair to say you made a little money on the concert? |
| Paquin: | Yea |
| Detective: | How much do you think you made? You paid $7500 but did you have to rent the space too? |
| Paquin: | No Retro let me use it for free to build his... |
| Detective: | You sold alcohol in there or was it a nonalcoholic night? |
| Paquin: | There was alcohol in there. |
| Detective: | Yea so you made better sales. Do you think you've doubled your money? |
| Paquin: | Yea |
| Detective: | Tripled it? |
| Paquin: | No probably doubled. |
| Detective: | So you probably made 15, minus your $7,500? No, you probably made 20 something minus 7500. |
| Paquin: | Yea |

21) On September 25, 2017, PCPD applied for and obtained a search warrant for Paquin's residences, located at 179 Oak Street, Plattsburgh, New York and 1F College Avenue, Plattsburgh, New York, as well as his vehicle, resulting in the seizure of the defendant $3,748.00 in U.S. Currency.

22) On September 27, 2017, PCPD amended the warrant to include Paquin's account at U-First Credit Union, which was closed. Records for the Key Bank Account # XXXX8205 showed a balance of $390.00. The account was frozen at that time. On September 29, 2017, $15,360.00 was deposited from Eventbrite. The entire balance of $15,571.85 was seized on October 10, 2017.

23) Paquin routinely deposited cash in KeyBank Acct. # XXXX8205 in the amounts necessary to pay bills, he does not carry a large balance. On July 14, 2017, Paquin deposited $9,000.00 in the defendant financial account. On the same date, a wire transfer was sent to Icon Adverting for $9,025.00.

24) The account statements from KeyBank Acct.#XXX8205 dated August 17, 2017 shows a beginning balance of $273.64. Paquin deposited $5,422.00 over the course of the month ending on September 20, 2017 to cover expenses for a trip to California, his source for Marijuana. In his interview with the Detectives, Paquin admitted that he sent himself a package of marijuana while on this trip.

25) The $15,360.00 deposited in KeyBank Acct.#XXX8205 on September 29, 2017 from Eventbrite is traceable to proceeds of violations of Title 21 U.S.C. §§ 841 and 846 and represents money involved in money laundering transactions in violation of 18 U.S.C. §§ 1343, 1956.

26) On February 16, 2018, Paquin was arrested and charged by New York State Police Plattsburgh, New York and charged with Criminal Possession of marijuana- 2nd. November 26, 2012 Paquin was arrested by New York State Police in Plattsburgh, New York and charged with Criminal Possession of a Controlled Substance with intent to sell. Paquin pled guilty on February 21, 2014, to Attempted Criminal Sale of a Controlled Substance and was sentenced to Post Release Supervision of 1 year.

## POTENTIAL CLAIMANTS

27) On or about December 1, 2017, the Drug Enforcement Administration received an Administrative Claim from Holden J. Paquin for the defendant currency and the defendant financial account.

28)     Upon information and belief, the following person/s who may claim an interest in the defendant vehicle are not in the military service, are not infants and are not incompetent persons.

**WHEREFORE**, the United States of America prays that process of issue in due form of law, according to the course of this Court in actions in rem, against the defendant currency and that a warrant issue for the arrest of the defendant as more particularly described herein; that all persons having any interest therein be cited to appear herein and answer the complaint; that a judgment be entered declaring the defendant condemned and forfeited to the United States of America for disposition in accordance with law; that the costs of this suit be paid to and recovered by the United States of America; and that the United States be granted such other and further relief as this Court may deem just and proper.

Dated: March 1, 2018                              GRANT C. JAQUITH
                                                  United States Attorney

                                          By:     /s
                                                  _____
                                                  Tamara B. Thomson
                                                  Assistant United States Attorney
                                                  Bar Roll No. 515310

**VERIFICATION**

STATE OF NEW YORK       )
                        ) ss:
COUNTY OF CLINTON       )

Marc J. Felio, being duly sworn, deposes and states:

I am a Task Force Officer with the Drug Enforcement Administration. I have read the foregoing Complaint for Forfeiture and assert that the facts contained therein are true to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information received from other law enforcement officers.

Dated this ___1st___ day of ~~February~~ March, 2018.

_____
Marc J. Felio, Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me this ___1st___ day of ~~February~~ March AM, 2018.

_____
Notary Public

DIANE M. MURPHY
Notary Public, State of New York
No. 01MU6081376
Qualified in Clinton County
Commission Expires October 7, 2018

JS 44   (Rev. 12/07)     **CIVIL COVER SHEET**     8:18-CV-263

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

### DEFENDANTS
$3,748,00 in U.S. currency and Keybank Acct. # XXXX8205 VL: $15,571.85

**(b)** County of Residence of First Listed Plaintiff: **Albany**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: **Clinton**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Tamara Thomson, Assistant U.S. Attorney (315) 448-0672
United States Attorney's Office, 100 South Clinton Street
Syracuse, New York 13261

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**
PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- [X] 690 Other

LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)
- [ ] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
21 USC 881, 18 USC 981
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE          DOCKET NUMBER

DATE: 03/01/2018
SIGNATURE OF ATTORNEY OF RECORD: s/Tamara B. Thomson

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT **Waived**          APPLYING IFP          JUDGE **GTS**          MAG. JUDGE **CFH**